UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


CONTINENTAL INSURANCE COMPANY                 CIVIL ACTION


VERSUS                                        NO: 07-3862
                                              C/W 07-4592


EMERALD STAR CASINO NATCHEZ,                  SECTION: "R"
L.L.C. ET AL.


**ORDER AND REASONS**

Before the Court are Emerald Star Casino & Resorts, Inc.'s motion for partial summary judgment (R. Doc. 35), and Emerald Star Casino Natchez, L.L.C.'s, Big River Enterprises, L.L.C.'s, and Lake of Torches Federal Development Corporation's motion to stay and to compel arbitration. (R. Doc. 63.)  For the following reasons, the Court GRANTS IN PART and DENIES IN PART both motions.


**I. BACKGROUND**

On February 24, 2005, Emerald Star Casino & Resorts, Inc. ("Emerald Star") formed Emerald Star Casino Natchez, L.L.C. ("the LLC").  For about one year, Emerald Star was the sole member and

100 percent owner of the LLC.  Although Emerald Star was the sole member of the LLC, Big River Enterprises, L.L.C. and Lake of Torches Federal Development Corporation loaned money, in the form of convertible promissory notes, to the LLC.  These loans included a five million dollar loan from Lake of Torches.  On September 6, 2005, Emerald Star purchased the M/V PLAYER RIVERBOAT III, as well as electrical equipment, gaming machines, and other equipment (altogether, "the boat").  Emerald Star used at least $2,350,000.00 from Lake of Torches' loan to buy the riverboat.  Emerald Star had purchased an insurance policy on the riverboat from Continental Insurance Company on November 21, 2003, when the property was under an option to purchase agreement.  The named insured on the insurance policy is Emerald Star, although Emerald Star used $68,000 of money loaned to the LLC to pay for the insurance and/or premiums.

On September 12, 2005, Emerald Star transferred title to the boat to the LLC.  Shortly thereafter, on September 24, 2005, the insured property was damaged during Hurricane Rita.  Sometime during 2005 or early 2006, the property was further damaged by vandalism.  In October of 2006, Continental paid Emerald Star $300,000 as an initial payment for the property damage.

On February 16, 2007, as part of the execution of the Operating Agreement for the LLC, Emerald Star transferred 55

percent of the interests in the LLC to Big River and Lake of Torches.  Emerald Star then owned a 45 percent interest in the LLC, and Big River and Lake of Torches each owned a 27.5 percent interest.

On July 13, 2007, Continental agreed to pay Emerald Star an additional $1,076,736.00 for the damage to the insured property. Emerald Star accepted the offer.  Apparently Continental then became unsure as to the proper party to whom to make the payment, as the LLC also claimed entitlement to the insurance proceeds. On July 25, 2007, Continental filed a complaint for declaratory judgment against Emerald Star, the LLC, Big River, Lake of Torches, and Charles D. Cato, the officer and director of Emerald Star.  Continental filed the declaratory judgment action seeking adjudication of the proper party to whom it should make the settlement payment.  On September 7, 2007, Continental deposited the $1,076,736.00 into the registry of the Court.

On August 28, 2007, Emerald Star and Cato answered the complaint and filed a counterclaim against Continental. (R. Doc. 7.)  The same day, Emerald Star filed a separate complaint against Continental. *See* Case No. 07-4592.  The case was transferred to this section and consolidated with 07-3862.  On October 5, 2007, Big River and Lake of Torches answered the complaint and filed a cross-claim against Emerald Star and Cato.

3

On October 29, 2007, the LLC answered the complaint and also
filed a cross-claim against Cato and Emerald Star.  Emerald Star
now moves for partial summary judgment and seeks to have the
Court declare it the named insured and loss payee under the
insurance policy and direct that the $1,076,736.00 in the
registry of the Court be paid to Emerald Star.  The LLC moves the
Court to stay further proceedings, compel arbitration, and
maintain all the insurance proceeds in the registry of the Court.

**II. ANALYSIS**

    **A.**   **Motion to Stay, Compel Arbitration, and Maintain
Insurance Proceeds in the Registry of the Court**

       *1.*  *Arbitration*

On March 11, 2008, the LLC, Big River and Lake of Torches
filed a motion to stay further proceedings, compel arbitration,
and maintain in the registry of the Court the insurance proceeds.
Although the LLC, Big River, and Lake of Torches did not specify
the basis of their motion to compel arbitration, the Court
proceeds on the assumption that the motion is brought pursuant to
the Federal Arbitration Act, 9 U.S.C. § 3.  "A motion under this
section requests the district court to refrain from further
action in a suit pending arbitration, and requires the court to
first determine whether there is a written agreement to arbitrate

4

between the parties, and then whether any of the issues raised are within the reach of that agreement." *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 750 (5th Cir. 1986).

In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts conduct a two-step inquiry. The first step is to determine whether the parties agreed to arbitrate the dispute. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). In this analysis, the Court must determine "whether there is a valid agreement to arbitrate between the parties" and "whether the dispute in question falls within the scope of that arbitration agreement." *Id.* at 258. After the Court determines that there is a valid arbitration agreement, it must decide whether "legal constraints external to the parties' agreement foreclose[s] the arbitration of those claims." *Id.*

The Court finds that there is a valid agreement to arbitrate between the members of the LLC and that the dispute in question falls within the terms of the agreement. The arbitration clause provides as follows:

> Any controversy arising out of or relating to this agreement, or the making, performance or interpretation thereof, including the scope of this arbitration provision, claims arising thereunder or relating thereto, and any claims involving statements, agreements or

representations made during the negotiation of this
Agreement, whether in contract or in tort, shall be
settled by final and binding arbitration before a single
arbitrator.

(Operating Agreement § 13.07.)

The LLC, Big River, and Lake of Torches filed cross-claims
against Emerald Star. (*See* R. Docs. 23, 34).  They contend that
the insurance for the boat was purchased with money from the LLC,
and on behalf of the LLC.  They further contend that, under the
Operating Agreement, both the insurance policy that covers the
riverboat, and any proceeds payable under the policy, are assets
of the LLC.  The proceeds include the over one million dollars in
the registry of the Court and the $300,000.00 Continental already
disbursed to Emerald Star.  These are controversies "arising out
of or relating to this agreement, or the making, performance or
interpretation therefor."  Further, no party has suggested that
"legal constraints external to the parties' agreement
foreclose[s] the arbitration of those claims." *Webb*, 89 F.3d at
258.

To the contrary, all the LLC parties are in agreement that
arbitration is appropriate for the claims of the LLC, Big River,
and Lake of Torches against Emerald Star.  All three defendants
stated in their Answer and Defenses that the Operating Agreement
contains an arbitration clause and that the Court should stay all

6

proceedings until the defendants submit to binding arbitration. (*See* R. Docs. 23, 34.) Emerald Star also states in its motion for partial summary judgment, "If the LLC Parties have an alleged damage claim against Emerald Star, then they can pursue that separate and distinct claim in arbitration against Emerald Star." (R. Doc. 35-2 at 7).

Although it appears that all of the parties are in agreement that claims against each other are subject to arbitration, they dispute where that arbitration should take place. Emerald Star avers that arbitration must take place in St. Petersburg, Florida. (*See* Operating Agreement § 13.07) ("All arbitration proceeds shall be held in St. Petersburg, Florida.") Big River and Lake of Torches have amended the Operating Agreement to change the location for any arbitration to Jackson, Mississippi. Although Emerald Star protests that the other members of the LLC are not entitled to unilaterally change the location of the arbitration, as the sole voting members of the LLC, the contract allows Big River and Lake of Torches to amend the Operating Agreement. The Operating Agreement includes the following provision on amendment:

> This Agreement may be amended or modified by the Members from time to time, only by a written instrument adopted by the Voting Members; provided, however, that (a) an amendment or modification reducing a Member's Percentage Interest or increasing its commitment (other than to

> reflect changes otherwise provided by this Agreement) is
> effective only with that Member's consent, (b) an
> amendment or modification reducing the required
> Percentage Interest or other measure for any consent or
> vote in this Agreement is effective only with the consent
> or vote of Members having the Percentage Interest or
> other measure theretofore required, (c) amendment of the
> type described in Section 3.05 may be adopted as there
> providing, and (d) an amendment or modification with
> respect to the dissolution of the Company in accordance
> with Section 12.01 is effective only with the consent of
> Emerald Star.

(Operating Agreement § 13.05.)  Big River and Lake of Torches,
the sole voting members of the LLC, amended the Operating
Agreement to change the venue of arbitration proceedings, which
amendment became effective June 1, 2007. (Amendment to Operating
Agreement, R. Doc. 48-10 at 28) ("Article XIII, Section 13.07 of
the Operating Agreement is hereby amended to change the venue of
all arbitration proceedings from St. Petersburg, Florida to
Jackson, Mississippi.")  Nothing in the Operating Agreement
prevents the voting members from amending the arbitration
provision.  For example, although the LLC cannot be dissolved
without the consent of Emerald Star, no similar language prevents
the members from amending the arbitration venue without Emerald
Star's consent.  Emerald Star's citation to *National Iranian Oil
Co. v. Ashland Oil, Inc.*, 817 F.2d 326 (5th Cir. 1987), is
inapposite.  In *National Iranian Oil*, the Fifth Circuit held that
it could not order arbitration to take place in Mississippi when

the contract provided for it to occur in Iran. *See id. at* 334 ("Because arbitration is a creature of contract, we cannot rewrite the agreement of the parties and order the proceeding to be held in Mississippi."). Here, Big River and Lake of Torches do not ask the Court to re-write the Operating Agreement, but rather to enforce it. Emerald Star chose not to protect itself from a change of arbitration venue in the Operating Agreement, and the Court will not do so on its behalf. Accordingly, the LLC, Big River, Lake of Torches, and Emerald Star are ordered to submit the disputes that are the subject of their cross-claims to arbitration proceedings in Jackson, Mississippi.

The Court finds that there is no valid agreement to arbitrate between any members of the LLC and either Charles Cato or Continental. Neither is a party to the Operating Agreement, and therefore they are not subject to the arbitration provision contained therein. In addition, the LLC, Big River, and Lake of Torches are not parties to the insurance contract entered into by Emerald Star and Continental.

## 2. Stay

Once the Court finds the dispute arbitrable, it has no choice but to stay the action in response to a motion to stay. *See Midwest Mech. Contractors, Inc.*, 801 F.2d at 750. With regard to the claims of the LLC members against each other, this

Court holds that there is a written Operating Agreement with an arbitration provision that covers their claims.  The Court therefore stays all cross-claims of the LLC members pending arbitration.

The LLC, Big River, and Lake of Torches have also asserted cross-claims against Charles Cato.  As addressed above, Cato is not a party to the Operating Agreement.  Generally, the mandatory stay provision of the Federal Arbitration Act applies only to signatories of the contract. *See Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 540 (5th Cir. 2001); *see also In the Matter of Talbott Big Foot, Inc.*, 887 F.2d 611, 614 (5th Cir. 1989) (holding that the mandatory stay provision of § 3 does not apply to nonsignatories to the arbitration agreement).  The Fifth Circuit has, however, recognized two exceptions to this rule.  A motion to stay may be granted against nonsignatories if: (1) the issues to be litigated in district court would render the arbitration redundant and meaningless, *see Harvey v. Joyce*, 199 F.3d 790, 795-96 (5th Cir. 2000); or (2) the issues to be litigated in district court are identical to those submitted to arbitration, harming the signatory parties' right to arbitrate, *see Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999); *Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976).  Both exceptions apply here; the LLC, Big River,

and Lake of Torches asserted the same cross-claims against both Emerald Star and Cato, and those claims are based on the same operative facts.  Accordingly, all cross-claims against Charles Cato are stayed pending the outcome of the arbitration. *See Harvey*, 199 F.3d at 795-96 (finding that if the non-signatory were forced to try the case, "the arbitration proceedings would be both redundant and meaningless").

Continental is not subject to an arbitration agreement with any party to this lawsuit, and the Court does not find that a stay of Continental's declaratory judgment action or Emerald Star's counterclaim against Continental is warranted in this case.  The issues to be litigated in Continental's declaratory judgment action require interpretation of Continental's insurance policy, which will not be resolved during arbitration.  Emerald Star's bad faith claim against Continental concerns penalties for nonpayment of insurance proceeds, which likewise is not subject to the arbitration among the LLC members.  The Court will therefore proceed with Emerald Star's motion for partial summary judgment.  Continental and Emerald Star may resolve or litigate Emerald's Star's counterclaim while the rest of the claims in the lawsuit are stayed pending arbitration.

### A.   Motion for Partial Summary Judgment

#### 1. Legal Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest

12

upon the pleadings, but must identify specific facts that
establish a genuine issue exists for trial. *See id.* at 325;
*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

      2.   *Named Insured & Loss Payee*

     The Court finds that the Continental insurance policy
unambiguously states that Emerald Star Casino & Resorts, Inc. is
the assured. (*See* "Insurance Policy," R. Doc. 35-4 at 30 of 42.)
The contract further provides that "Loss, if any [is] payable to
the Assured." (*Id.*)  Under Louisiana law, an insurance policy,
like other contracts, is the law between the parties. *Pareti v.
Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988).  If the policy
wording is clear, and it expresses the intent of the parties, the
agreement must be enforced as written. *Id; see also Etienne v.
National Automobile Ins. Co.*, 759 So. 2d 51, 54 (La. 2005).

     To recover on an insurance policy, a party must also have an
interest in the insured property at the time of the loss. *See
Union Cent. Life Ins. Co. v. Harp.*, 14 So. 2d 643, 647 (La.
1943); *Miller v. Hartford Fire Ins. Co.*, 422 So. 2d 1143, 1143
(La. 1982).  At the time the boat was damaged during Hurricane
Rita, Emerald Star had transferred the title of the boat to the
LLC.  Emerald Star, however, was still the 100 percent owner of
the LLC.  The Court further finds that as the 100 percent owner
of the LLC in 2005 and 2006, Emerald Star had an insurable

interest in the boat at the time of the losses.  Shareholders and parent corporations are entitled to insure property owned by their wholly owned subsidiaries. *Providence Washington Ins. Co. v.* Stanley, 403 F.2d 844, 848-49 (5th Cir. 1968) (interpreting Alabama law and finding that "[t]he overwhelming majority of jurisdictions ... recognize that a stockholder in a corporation has a legal insurable interest in its property in proportion to the amount of his stockholdings."); *see also* 3 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 42:10 (3d ed. 2007) ("A majority shareholder ... has generally been recognized to have a significant insurable interest in the corporate property"); *Agency Mgmt. Corp. v. Green Acres Realty, Inc.*, 286 So. 2d 465 (La. App. 1974) (holding that when shareholder was listed as the insured on an insurance policy covering a property owned by a corporation for which he was the controlling shareholder, he had an insurable interest in the property and was entitled to loss proceeds from the policy).  That Emerald Star is no longer the 100 percent owner of the LLC is of no consequence to the analysis of whether it had an insurable interest at the time of the loss. *See, e.g., Miller*, 422 So. 2d at 1143 ("Since the right of recovery under the policy accrued as of the time of the loss, the fact that the insured thereafter parted with his interest or assigned the policy does not defeat recovery.").

14

Big River and Lake of Torches contend that they are entitled
to the insurance proceeds because Emerald Star was acting as an
agent of the LLC when it purchased the insurance policy, and/or
Emerald Star transferred its rights to the insurance proceeds to
the LLC in the Operating Agreement.[1]  Big River and Lake of
Torches have introduced no real evidence of an agency agreement.
The LLC did not exist at the time that Emerald Star purchased the
insurance policy from Continental, therefore Emerald Star could
not have been acting as the LLC's agent in procuring the
insurance. (*See* Insurance Policy at 30 of 42) (effective date of
policy listed as November 21, 2003.)  Although the LLC existed at
the time of the losses in 2005 and early 2006, Emerald Star was
still the sole member and 100 percent owner of the LLC.

Further, the LLC Operating Agreement does not unambiguously
transfer the proceeds of insurance policies held by Emerald Star
to the LLC.  Section 4.10(f) provides:

> Insurance. Except as set forth in Schedule 4.10(f),
> Emerald Star and the Company ... have in full force and
> effect fire and casualty insurance policies, and
> insurance against other hazards, risks and liabilities
> to persons and property to the extent and in the manner
> customary for companies in similar businesses similarly
> situated.  Attached as Schedule 4.10(f) is a detailed

---

[1] While the LLC parties can address these claims through
arbitration, the Court will address them for the limited purpose
of determining if the LLC has any direct claim against
Continental for the insurance proceeds.

15

> description of all insurance claims made with respect
> to the players Riverboat III and all payments and
> reimbursements made in connection with such claims.
> Emerald Star represents that as of the date hereof, the
> outstanding amounts due with respect to the repair of
> the Players Riverboat III have been disclosed in
> Schedules 4.10(d) and/or (e) and all future repairs to
> the Players Riverboat III to its knowledge were
> previously adequately budgeted for in the amount of
> $848,000.00 (listed on Schedule 4.10(f) hereto).

("Operating Agreement," R. Doc. 48-4 at 19.) Big River and Lake of Torches admit that the contract "is not a model of clarity," but then contend that this section "was intended" to transfer the riverboat, insurance policy, and proceeds payable under the policy to the LLC. Neither the Operating Agreement nor the bill of sale, however, states that the insurance policy is transferred from Emerald Star to the LLC. Although earlier drafts of the Operating Agreement unambiguously transferred proceeds of the insurance policy to the LLC as an asset, that draft language was not included in the final contract. (Mot. Sum. J. Ex. C, R. Doc. 35-5 at 2 ¶ 4.10(f)) (draft language providing that "Emerald Star has caused all pending insurance claims as it relates to any and all Assets transferred to the Company ... and that all proceeds from any insurance claims with respect to the Assets made at any time ... shall be for the benefit of the Company"). Finally, even if Emerald Star had assigned its rights under the insurance policy to the LLC, the proceeds would still be payable to Emerald

16

Star. (*See* Insurance Policy at 29 of 42) (Providing that an "additional Assured" may be named, but that "loss, if any shall be payable as provided elsewhere in this policy.").

The LLC, Big River, and Lake of Torches are not named insureds or additional insureds of the insurance policy, nor are they parties to the insurance contract.  Accordingly, they do not have a claim against Continental for the insurance proceeds.[2]

## C.  Insurance Proceeds

The Court's rulings on Emerald Star's motion for partial summary judgment and on the motion to compel arbitration and to enter a stay do not amount to a final judgment on all of the claims in this case.  The Court will not disburse the insurance proceeds in the registry of the Court until all claims are resolved and a final judgment is entered in this case. *See* Fed. R. Civ. P. 54(b) ("any order ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights

---

[2] Big River and Lake of Torches even admit in their opposition to Emerald Star's motion for summary judgment that "the issue regarding who is the rightful recipient of the insurance proceeds is a dispute between the LLC members ..."

and liabilities."); *Way v. Reliance Ins. Co.*, 815 F.2d 1033 (5th Cir. 1987) (judgment finding defendant liable, but not awarding damages pending arbitration, was not a "final judgment").

**III. CONCLUSION**

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Emerald Star's motion for partial summary judgment and the LLC's, Big River's, and Lake of Torches' motion to compel, stay, and maintain proceeds in the registry of the Court. The LLC's, Big River's, and Lake of Torches' cross-claims against Emerald Star and Cato are STAYED pending arbitration.

New Orleans, Louisiana, this <u>25th</u> day of April, 2008.

<u>Sarah Vance</u>
SARAH S. VANCE
UNITED STATES DISTRICT COURT

18