```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


CONTINENTAL INSURANCE COMPANY              CIVIL ACTION

VERSUS                                     NO: 07-3862
                                           C/W 07-4592

EMERALD STAR CASINO NATCHEZ,               SECTION: "R"
L.L.C. ET AL.
```

**ORDER AND REASONS**

Before the Court is Emerald Star Casino & Resorts, Inc.'s motion for reconsideration, clarification, and modification of the portion of the Court's Order and Reasons directing arbitration to take place in Mississippi. (R. Doc. 78.)  For the following reasons, the Court GRANTS Emerald Star's motion for reconsideration.


**I.   BACKGROUND**

On April 25, 2008, the Court granted in part and denied in part Emerald Star's summary judgment motion and further granted in part and denied in part Emerald Star Casino Natchez, L.L.C.'s, Big River Enterprises, L.L.C.'s, and Lake of Torches Federal

Development Corporation's motion to stay and to compel arbitration. (*See* R. Doc. 77.)  The Court ordered the LLC, Big River, Lake of Torches, and Emerald Star to submit the disputes that are the subject of their cross-claims to arbitration proceedings.  The Court therefore stayed all cross-claims of the LLC members pending arbitration, as well as all cross-claims against Charles Cato.[1]  The Court further ordered that the arbitration should take place in Jackson, Mississippi.

Emerald Star moves the Court to reconsider the portion of its opinion directing the arbitration to take place in Mississippi.  The original operating agreement provided for arbitration to take place in St. Petersburg, Florida. (*See* Operating Agreement § 13.07) ("All arbitration proceedings shall be held in St. Petersburg, Florida.")  On June 1, 2007, Big River and Lake of Torches amended the Operating Agreement to change the location of arbitration proceedings and to designate that the arbitrator must be a Mississippi attorney:

> Article XIII, Section 13.07 of the Operating Agreement is hereby amended to change the venue of all arbitration proceedings from St. Petersburg, Florida to Jackson, Mississippi.  Additionally, Section 13.07 is amended to provide that the arbitrator must be a Mississippi attorney.  The Effective Date of this Amendment shall be

---

[1] Continental Insurance Company and Emerald Star have also agreed to stay Emerald Star's counterclaim against Continental pending arbitration. (*See* R. Doc. 87.)

June 1, 2007. (Amendments to Operating Agreement, R. Doc. 48-10.) The amendment went into effect after the current dispute began regarding which corporate entity is entitled to the Continental insurance proceeds. (*See, e.g.*, R. Doc. 78-6) (Letter from attorney for the LLC dated May 18, 2007 to counsel for Continental regarding the proper loss payee.)

Emerald Star contends that this amendment to the Operating Agreement, after the dispute regarding the insurance proceeds arose, and without prior notice to Emerald Star, is unenforceable.

**II.  ANALYSIS**

"The argument that an arbitration agreement or clause is unconscionable or otherwise unenforceable requires consideration of both federal and state law." *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 166 (5th Cir. 2004). As a matter of federal law, arbitration agreements and clauses should be enforced, unless they are invalid under principles of state law governing contracts. *Id.; see also Washington Mut. Fin. Co. v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (because the purpose of the Federal Arbitration Act is to give arbitration agreements the same force and effect as other contracts, "courts apply the

contract law of the particular state that governs the agreement."). Courts may not, however, invalidate arbitration agreements under state laws applicable only to arbitration provisions. *See Iberia Credit*, 379 F.3d at 166. Because the Operating Agreement is governed by Mississippi law, the Court applies Mississippi state law in its analysis. (*See* Operating Agreement § 13.07.)

### A.  Commitment

Although the Court previously found that Big River and Lake of Torches' amendment to the Operating Agreement was enforceable, upon reconsideration the Court finds that Big River and Lake of Torches could not amend the Agreement to change the location for the arbitration proceedings to Mississippi. The Operating Agreement prevents any amendment that increases a member's commitment without that member's consent:

> This Agreement may be amended or modified by the Members from time to time, only by a written instrument adopted by the Voting Members; provided, however, that (a) an amendment or modification reducing a Member's Percentage Interest **or increasing its commitment** (other than to reflect changes otherwise provided by this Agreement) is effective only with that Member's consent ...

(Operating Agreement § 13.05) (emphasis added.) Emerald Star avers that changing the location for arbitration from Florida to Mississippi increases its financial commitment, as its principal place of business is in Florida and its offices are located in

4

St. Petersburg, Florida.  Additionally, Charles Cato, Emerald Star's sole officer, resides in Florida. (*See* Cato Aff., R. Doc. 78-3 ¶ 4.)

The Court finds that the amendment changing the location for arbitration to Mississippi from Florida increases Emerald Star's financial commitment, and therefore is void without Emerald Star's consent.  Although it is not clear from the Operating Agreement what the parties meant by Emerald Star's "commitment," and the parties have not provided the Court with any extraneous evidence of their intention in drafting this provision, Black's Law Dictionary defines commitment as "[a]n agreement to do something in the future, esp. to assume a financial obligation." BLACK'S LAW DICTIONARY (8th ed. 2004).  Emerald Star's agreement to submit disputes to arbitration was a commitment, and changing the location of the arbitration to Mississippi increases Emerald Star's commitment. *See also* 83 AMJUR POF 3d 1, § 139 (2008) ("The place where arbitration is held can have dramatic economic consequences.").

Although the LLC, Big River, and Lake of Torches contend that changing the venue for arbitration proceedings does not increase Emerald Star's financial commitment because Emerald Star is incorporated in Mississippi, they do not dispute that Emerald Star's principal place of business, its offices, and its sole

officer are all located in Florida.  They also do not dispute that they cannot enact an amendment increasing Emerald Star's financial commitment without Emerald Star's consent.

**B.   Notice**

The Court further finds the amendment unenforceable with respect to the dispute over the insurance proceeds for another reason.  In *Dumais v. American Golf Corporation*, 299 F.3d 1216 (10th Cir. 2002), the Tenth Circuit found that "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Id.* at 1219.  The Court found that because a provision in an employee handbook allowed the employer unilaterally to alter, modify, or change the arbitration agreement, there was no valid arbitration agreement.

The Fifth Circuit has not found illusory all agreements that reserve to one party the right to alter the terms of an arbitration agreement unilaterally; rather, it has focused on whether there was sufficient notice to the other parties to the agreement.  In *Armstrong v. Associates International Holdings Corporation*, 242 Fed. Appx. 955 (5th Cir. 2007), for example, the Court found that under Texas law an arbitration policy in which the employer reserved the right to "revise, amend, modify, or discontinue the Policy at any time in its sole discretion," did

6

not make the agreement illusory because the employer's revisions or amendments could not take effect until thirty days after notice to the employee. *Id.* at 958; *see also Iberia Credit*, 379 F.3d at 173-74 (finding that arbitration clause was not unconscionable under Louisiana law, even though agreement included a change-in-terms provision, because company had the right to change the terms only "upon notice").  On the other hand, in *Morrison v. Amway Corporation*, 517 F.3d 248 (5th Cir. 2008), the Fifth Circuit held that, under Texas law, an arbitration agreement was illusory and unenforceable because one of the parties to the agreement had the power to unilaterally repeal or amend the arbitration provisions.  Although the party had to publish notice of the amendment, nothing prevented the amendment from applying to disputes arising before its publication. *Id.* at 254 ("there is nothing to suggest that once published the amendment would be inapplicable to disputes arising, or arising out of events occurring, *before* such publication.").  The Fifth Circuit's rationale is that when parties have notice they effectively consent to the new terms of the contract*. See, e.g., Iberia Credit*, 379 F.3d at 173 ("The notice of the change in terms can be understood as an invitation to enter into a relationship governed by the new terms."); *Armstrong*, 242 Fed. Appx. at 958 ("An employee's continued

7

employment with knowledge of a change in the at-will employment relationship constitutes acceptance of the change as a matter of law.").

The Operating Agreement at issue appears to allow voting members to amend the arbitration provision unilaterally, including the forum selection provision, without notice or limitation, unless the amendment or modification increases another member's commitment.[2]  Although the Agreement does not explicitly contain a reservation of rights allowing the voting members to amend the arbitration provision unilaterally, the voting members' actions are tantamount to treating Section 13.05 as authority to do so.  This can produce clearly inequitable results.  As noted by the Fourth Circuit in *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), when a party reserves the right to modify the rules of arbitration whenever it wishes and "without notice," nothing prohibits that party "from changing the rules in the middle of an arbitration proceeding." *Id.* at 939; *see also Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (arbitration agreement unenforceable when one party reserved the right to alter the applicable rules and procedures of the arbitration without any

---

[2] The other restrictions on amendment do not appear to be relevant to arbitration.

obligation to notify, much less receive consent from other parties to the agreement).

This case law suggests that even if the Operating Agreement gives voting members the right to amend the arbitration provision without the consent of all the members, they cannot do so without notice. It further suggests that such amendments cannot apply to disputes that arose before the enactment of the amendment. *Cf. Bank One, N.A. v.* Coates, 125 F.Supp.2d 819 (S.D. Miss. 2001) (enforcing arbitration provision added to credit card agreement by amendment when cardmembers were given notice of change and the option of rejecting provision); *Herrington v. Union Planters Bank*, 113 F.Supp.2d 1026, 1031-32 (S.D. Miss. 2000) (finding enforceable bank's revision to account agreement to include an arbitration provision because plaintiffs were given notice that their accounts were revised and continued to use their accounts). Big River and Lake of Torches have attempted to alter the arbitration provisions, without notice to Emerald Star and after a dispute arose with Emerald Star over insurance proceeds. The Court finds the amendment unenforceable.

The original arbitration provision, however, is not illusory or unenforceable. *See, e.g., Iberia Credit*, 379 F.3 at 174 n.18 (if a party could show that an amendment was "unconscionable or otherwise unenforceable ... it would not mean that the original

9

agreement never bound the company to anything"); *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So.2d 732, 735 (Miss. 2007) (providing for "striking unconscionable terms and leaving the remainder of the agreement intact."). (*See also* Operating Agreement §§ 13.07, 13.14.) (providing for the severability of any unenforceable or invalid provisions).  Therefore, this Order does not alter the Court's previous Order staying claims and compelling arbitration.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS Emerald Star's motion for reconsideration.  The Court vacates that portion of its Order and Reasons that directed the arbitration to take place in Jackson, Mississippi.

The Court further orders the cases administratively closed pending arbitration.

New Orleans, Louisiana, this  10th  day of July, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT COURT